NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.K., T.K. and D.K., <br><br> Plaintiffs, <br><br> v. <br><br> RIVER DELL REGIONAL SCHOOL DISTRICT BOARD OF EDUCATION, CHARLES LANGE, LORRAINE BROOKS, SUSAN BECKER, DESIREE FERRANDI, and KATHRYN KREGER, in their individual and official capacities, and PATRICK J. FLETCHER, in his official capacity, <br><br> Defendants. | Civil Action No.: 11-cv-00687 (CCC) <br><br> **OPINION** |

**CECCHI, District Judge.**

Currently pending before the Court is a motion for summary judgment filed on March 7, 2014 by defendants River Dell Regional School District Board of Education, Charles Lange, Lorraine Brooks, Susan Becker, Kathryn Kreger, and Patrick J. Fletcher (collectively, "Defendants"). Plaintiffs E.K., T.K. and D. K. (collectively, "Plaintiffs") filed an opposition to Defendants' motion on June 9, 2014. (ECF No. 56). The Court decides the motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

I.  **BACKGROUND**[2]

Plaintiff E.K. is the son of father T.K. and mother D.K. This case arises from plaintiff E.K.'s ("E.K.") enrollment and education at River Dell High School ("River Dell") between 2007 and 2011. E.K. was diagnosed with the learning disability 'Attention Deficit Hyperactivity Disorder' ("ADHD") when he was 8 years old. At that time, E.K. was enrolled at Solomon Schechter School, a K-12 private school. E.K.'s ADHD was reevaluated at the Hackensack Medical Center when E.K. was 14. The results suggested that E.K. continued to suffer from ADHD.

In June 2007, E.K.s parents met with representatives of River Dell's Special Education Program. During the meeting, D.K. and T.K. submitted the results of E.K.'s learning disability evaluations and were told that if E.K. enrolled at River Dell, a specialized plan would be put in place to address his disability. Thereafter, D.K. and T.K. enrolled E.K. at River Dell as a sophomore, to begin attendance in September 2007.

In August 2007, T.K. called Defendant Charles Lange ("Mr. Lange"), Director of Special Services at River Dell, to discuss the specialized plan for addressing E.K.'s ADHD, however, T.K. was advised to call back in September because E.K.'s file had yet to be reviewed. In September, T.K. called again and was told by Mr. Lange to call back in October. In October, T.K. called a third time and was directed by Mr. Lange to speak to Defendant Susan Becker ("Ms. Becker"). Subsequently, Ms. Becker explained to T.K. that she could not comment on E.K.'s accommodations until she received certain information from Mr. Lange.

In January 2008, while E.K. was in his sophomore year, T.K. again contacted Ms. Becker

---

[2] The following facts are undisputed.

regarding special education accommodations. Ms. Becker explained to T.K. that E.K. would not be afforded any special services or accommodations until Ms. Becker received certain information from Mr. Lange. T.K. then called Mr. Lange, who directed T.K. to Ms. Becker.

At the end of his first semester at River Dell, E.K.'s teachers observed that E.K. was frequently missing work, lacking in concentration and disorganized. In addition, E.K.'s grades were significantly below average. Over the following two years, E.K.'s grades remained poor. By E.K.'s senior year, E.K. was failing several courses.

In October 2009, during E.K.'s senior year, D.K. took E.K. to an adolescent psychiatrist who requested a copy of River Dell's evaluation report and 504 plan. D.K. contacted River Dell to obtain the report and plan and was informed that evaluations had never been performed, E.K. had never been classified and no plan or accommodation had ever been put in place. D.K. then contacted Mr. Lange, who admitted River Dell had failed to evaluate E.K. and blamed the mistake on the loss of E.K.'s file. Mr. Lange offered to institute a 504 plan for the remainder of E.K.'s senior year.

In April 2010, River Dell finally instituted a 504 plan for E.K. However, despite the 504 plan, E.K. failed his English and Computer Art Graphics courses, did not receive a diploma and was not permitted to participate in graduation. That summer, E.K. was tutored by his grandfather while taking courses at Bergen Community College. In September 2010, E.K. earned sufficient credits to receive a high school diploma.[3]

In December 2011, E.K., T.K. and D.K. brought suit as joint plaintiffs against the Defendants for failure to identify and accommodate E.K.'s learning disability. Plaintiffs seek

---

[3] As of the filing of the instant motion, E.K. is attending Brandeis University and has been accepted to Georgetown University Law Center to pursue his law degree.

compensatory damages, attorneys' fees and such other relief as the court deems just under Section 504 of the Rehabilitation Act ("Section 504"), the New Jersey Law Against Discrimination ("NJLAD"), and the Due Process Clause of the 14th Amendment to the United States Constitution.  Compl. 12 ¶¶ 66-76, Feb. 7, 2011, ECF No. 3.  Defendants' motion for summary judgment followed. (ECF No. 48)

## II. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, there exists a genuine issue of material fact for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In order to meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 249 (1986); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (stating that "[t]o raise a genuine issue of material fact," the opponent must "exceed the 'mere scintilla' threshold . . . ."). A fact is "material" if a dispute about that fact "might affect the outcome of the suit under governing [substantive] law," and a "genuine" issue exists as to that fact "if the evidence is such that a reasonable jury could return a verdict for the non moving party." Anderson, 477 U.S. at 248. The Court's role is to determine whether there is a genuine issue for trial, not to weigh the evidence and decide the truth of the matter. Id. at 249.

### III. DISCUSSION

#### A. Section 504 of the Rehabilitation Act

Plaintiffs' first claim is brought pursuant to Section 504 of the Rehabilitation Act ("Section 504"). Section 504 prohibits disability discrimination by school districts receiving federal financial assistance. Jeremy H. by Hunter v. Mount Lebanon Sch. Dist., 95 F.3d 272, 278 (3d Cir. 1996). The statute provides in relevant part:

> [N]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency. . . .

29 U.S.C. § 794(a).

Defendants argue that this Court does not have subject matter jurisdiction over Plaintiffs' Section 504 claim because Plaintiffs failed to exhaust their administrative remedies pursuant to the requirement of the Individuals with Disabilities Education Act ("IDEA"). Def.'s Mot. Summ. J. 5, ECF No. 48; 29 U.S.C. § 1415(l). Plaintiffs do not dispute that their administrative remedies remain unexhausted; rather, they respond that the relief requested cannot be granted by

the IDEA administrative process, and thus, the Plaintiffs' claim is exempt from the exhaustion requirement. Pltf's Opp. to Mot. Summ. J. 17, ECF No. 56.

### 1.     The Exhaustion Requirement

Pursuant to the IDEA, a district court can assert subject matter jurisdiction over civil actions seeking relief available under the IDEA only after the plaintiffs exhaust their administrative remedies. 20 U.S.C. § 1415(l) ("before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."). The Third Circuit has held that this provision applies to claims brought under Section 504 of the Rehabilitation Act. Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014) (IDEA "bars plaintiffs from circumventing the IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute- e.g., section 504 of the Rehabilitation Act . . . .") (citing Jeremy H., 95 F.3d at 281).

### 2.     Applicability of the IDEA's Exhaustion Requirement

> [D]etermining if the IDEA's administrative process must be exhausted before bringing claims in federal court turns on whether the parties could have asserted the claims under the IDEA. Intertwined with this inquiry is whether the claims could have been remedied by the IDEA's administrative process.

Batchelor, 759 F.3d at 272-273; see R.R. v. Manheim Tp. Sch. Dist., 412 F. App'x. 544, 550 (3d Cir. 2011); see also James S. ex rel. Thelma S. v. Sch. Dist. of Phila., 559 F.Supp. 2d 600, 616 (E.D. Pa 2008). Thus, because "[t]he IDEA affords parents of a disabled child the opportunity to present a complaint 'with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such

child[,]'" the relevant inquiry is whether the plaintiffs' claims "relate" to the identification, evaluation, or educational placement of a disabled student. Id. at 274 (citing 20 U.S.C. § 1415(b)(6)(A)) (emphasis in original)

Plaintiffs allege that River Dell violated Section 504 by negligently and/or intentionally failing to timely evaluate E.K. for a learning disability and provide him with appropriate accommodations. Compl. 10-11 ¶¶ 61-65, ECF No. 3. The alleged result of River Dell's misfeasance was, *inter alia*, a significant reduction in the benefit gained from his educational experience. Compl. 10-11 ¶¶ 63-64, ECF No. 3. The evaluation of a student's learning disability, the provision of corresponding accommodations and the benefits of education, irrefutably relate to the "identification, evaluation and educational placement of a disabled student." Batchelor, 759 F.3d at 274. Therefore, the IDEA's exhaustion requirement applies to Plaintiffs' claim and the Court must determine whether the administrative process was, in fact, exhausted. Id. (a Section 504 claim alleging numerous actions by school district to sabotage student's education "relate[s] unmistakably to the provision of a free appropriate public education, and [is] thus subject to the IDEA's exhaustion requirement") (citing Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000)); see also S.B. v. Trenton Bd. of Educ., No. CIV.A. 13-0949 FLW, 2014 WL 5089716, at *5 (D.N.J. Oct. 9, 2014).

### 3. Exhaustion of Available Administrative Remedies

The purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). Under the IDEA, aggrieved parties have access to a robust set of procedural safeguards, known collectively as the IDEA's administrative process. 20 U.S.C. § 1415(b)(6)(A). Implemented by states and districts

receiving federal financial assistance, the process provides parents with an avenue to file a complaint and to participate in an impartial due process hearing. 20 U.S.C. §§ 1415(b)(6)(A) and 1415(f)(1)(A). In New Jersey, after a parent files an administrative complaint, parents and the school board go to mediation; thereafter, if mediation is unsuccessful, a due process hearing is held before an administrative law judge ("ALJ"). See 20 U.S.C. § 1415(e) and (f); N.J.A.C. § 6A:14-2.7(c) and (d); see also, NJ Department of Education, IDEA 2004: Summary of Mediation and Due Process Requirements (2005). The ALJ is empowered to provide various forms of relief, including compensatory education, financial reimbursement, and attorneys' fees. 20 U.S.C. §§ 1400, 1401(8), 1412 (a)(1)(A), 1415(i)(2)(B)(iii).

Prior to the instant action, Plaintiffs did not file a due process grievance, did not engage in mediation with the school district and did not seek a due process hearing. Thus, their administrative remedies were not exhausted and this Court is deprived of subject matter jurisdiction unless an exception applies.

### 4. Exception to the IDEA's Exhaustion Requirement

Plaintiffs argue that even if their Section 504 claim falls within the scope of the exhaustion requirement, it is exempt because Plaintiffs' requested relief, compensatory damages, is unavailable through the administrative process. Pltf's Opp. to Mot. Summ. J. 17, ECF No. 56. Previously, courts in this circuit have held actions seeking compensatory damages to be exempt from exhaustion. See e.g., D.G. v. Somerset Hills Sch. Dist., 559 F. Supp. 2d 484, 496 (D.N.J. 2008). However, in a July 2014 decision, the Third Circuit Court of Appeals clarified that whether a claim is subject to exhaustion does not depend on the form of relief, but whether the underlying cause of action is so related to the provision of a free appropriate public education that it should first be addressed by the administrative process. See Batchelor, 759 F.3d 273-274.

Such is the case here.

In *Batchelor v. Rose Tree Media School District*, the Third Circuit observed that "the theory behind [Plaintiffs'] grievance may activate the IDEA's process, even if the [Plaintiffs] want a form of relief that the IDEA does not supply." Id. (citing Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 992 (7th Cir. 1996)). Thus,

> [i]n response to a school district's alleged bad behavior, the educational harms suffered by children with disabilities will be addressed first and foremost during the IDEA's administrative process. Once these educational deficiencies have been addressed, victims may seek further remedy in court pursuant to statutory schemes allowing for compensatory and punitive damages, such as Section 504 . . . .

Id. at 278. Therefore, the question of whether a plaintiff is exempt from exhaustion does not focus on the relief requested, but on the educational harm suffered. Id.

Preliminarily, the Court notes that, like the plaintiff in *Batchelor*, Plaintiffs' requested relief is not confined to compensatory damages. In addition to compensatory damages, plaintiffs also request "reasonable attorneys' fees and costs; [and, s]uch other relief as the Court deems just. Compl. 12 ¶ 74, ECF No. 3. In a due process hearing, an administrative law judge may grant relief in the form of attorneys' fees, compensatory education, and reimbursement. See Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 197 (3d Cir. 2004) (affirming an administrative law judge's order for a school district "to reimburse [the student] for the out-of-district tuition and related costs, including [the student']s reasonable attorneys' fees"). Thus, the Plaintiffs do, in fact, seek relief available under the IDEA.

Now the Court turns to whether the allegations underlying the Plaintiffs' causes of action "activate the IDEA's process." The alleged result of Defendants' Section 504 violation is that E.K. was unable to benefit from appropriate educational programs, special education services and educational training. Compl. 10-11 ¶ 63, ECF No. 3. Deficiencies in the provision of a free

appropriate public education are the very grievances upon which the IDEA's administrative process was built to address. 20 U.S.C. § 1400(d)(1)(A) (the purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs"). If the allegations in the complaint had been proven before an ALJ, E.K. and his parents would have had access to specifically tailored relief, guided by administrative officials with expertise in the field of education. In addition, the ALJ could have fashioned further appropriate remedies on an *ad hoc* basis "to ensure that [E.K.] [wa]s fully compensated for [River Dell's] past violations . . . under the IDEA and develop an appropriate equitable award." D.F. v. Collingwood Borough Board of Education, 694 F.3d 488, 498-99 (3d Cir. 2012) (internal citation omitted). Thus, the nature of Plaintiffs' educational harms are such that they could have found effective relief through the administrative process.

This finding is buttressed by the Court's observation that although compensatory damages are not available in a due process hearing, an ALJ could have provided Plaintiffs with compensatory education, such as the costs of classes at Bergen Community College, see Forest Grove Sch. Dist., 557 U.S. at 246; Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370 (U.S. 1985); Lester H. v. Gilhool, 916 F.2d 865, 869-70 (3d Cir. 1990), and tutoring by E.K.'s grandfather. D.F., 694 F.3d at 498-499 (compensatory education can take the form of summer school and tutoring). Indeed, "Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." Batchelor, 759 F.3d 277 (citing Sch. Comm. of Burlington, 471 U.S. at 370). Thus, despite being unable to award compensatory damages, the administrative process would have been able to provide Plaintiffs with relief akin to that which they seek in the instant action. See S.B., 2014 WL 5089716, at *6 (requiring exhaustion, despite

10

Section 504 claim seeking only compensatory damages, where IDEA "[wa]s the most appropriate avenue of relief"). Therefore, because the IDEA administrative process could have provided relief for the educational harms suffered by E.K, the Plaintiffs are not exempt from exhaustion.

Even taking all inferences in Plaintiffs' favor, the present action falls within the ambit of the IDEA exhaustion requirement. Plaintiffs failed to satisfy the exhaustion requirement and are unable to demonstrate that an exception applies.[4] Accordingly, this Court cannot assert subject matter jurisdiction over the Plaintiffs' Section 504 claim and Defendants' motion for summary judgment is granted.[5]

### B. NJLAD Claims brought by D.K. and T.K. on E.K.'s Behalf against All Defendants

Defendants also move for summary judgment as to Plaintiffs' state law claim under the

---

[4] Plaintiffs also argue they should be excused from exhaustion because a) they only became aware of their rights under Section 504 after E.K. graduated, and b) at the time of filing, the injuries to E.K.'s education were in the past, leaving damages the only viable relief. Pltf's Mot. Summ. J. 21-23, ECF No. 56. Plaintiffs' arguments fail. By their own admission, Plaintiffs *were* aware of potential avenues of relief while E.K. was still in high school: "[the Plaintiffs reached out to an attorney and] learned of the potential relief available to them . . . late in the first semester of [E.K.'s] senior year." Pltf's Opp. to Mot. Summ. J. 19, ECF No. 56. Plaintiffs also admit the availability of administrative remedies at the time of filing the instant complaint: "[in 2011,] the focus of the litigation was not on the supplemental educational relief possibly available under the IDEA . . . but rather on the economic disadvantages [suffered by E.K.] . . . ." Pltf's Opp. to Mot. Summ. J. 22, ECF No. 56. Finally, at the time of filing the instant complaint, E.K. was only a few months out of high school and under the age of twenty-one. Pursuant to the IDEA, a school district's obligation to provide a free appropriate public education does not terminate until the child reaches the age of twenty-one. 20 U.S.C. § 1412(a)(1)(A). He was thus within the scope of the IDEA at the time the complaint was filed and could have received myriad benefits via the administrative process, including financial reimbursement, compensatory education and a more developed factual record.

[5] Having granted summary judgment on procedural grounds, the Court declines to consider Defendants' substantive grounds for summary judgment.

11

NJLAD. Def.'s Mot. Summ. J. 26, ECF No. 48. However, the Court declines to assert supplemental jurisdiction and dismisses Plaintiffs' state law claim without prejudice. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [related state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction."); see also Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 181 (3d Cir. 1999) ("Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.").

"[T]he Third Circuit has held that, where all federal claims are dismissed before trial, 'the district court *must* decline to decide the supplemental state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" Fitzgerald v. Bellmawr Borough, Civil No. 05-1264 (JBS), 2007 WL 2687456, at 9 (D.N.J. Sept. 6, 2007) (quoting Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted) (emphasis added)); City of Pittsburgh Com'n on Human Relations v. Key Bank USA, 163 F. App'x 163, 166 (3d Cir. 2006) ("[I]f it appears that all federal claims are subject to dismissal, the court should not exercise jurisdiction over remaining claims unless 'extraordinary circumstances' exist.") (citations omitted)). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

The Court finds that there are no extraordinary circumstances that weigh in favor of the Court retaining jurisdiction over the state law claims in this case. Although this case has been pending in this Court, the Third Circuit has "determined that substantial time devoted to the case

and expense incurred by the parties do not constitute extraordinary circumstances." City of Pittsburgh Com'n on Human Relations, 163 F. App'x at 166 (citations and quotations omitted). To the extent that Plaintiffs are concerned about any relevant statute of limitations period, Congress has expressly provided for this foreseeable difficulty:

> The period of limitations for any [state law] claim asserted [pursuant to supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d); see also Hedges, 204 F.3d at 123.

Most importantly, any regard for the convenience of the parties is outweighed by the fact that Plaintiffs' claims present significant issues of state law, namely whether E.K.s excessive absenteeism is grounds for disqualification under the NJLAD and whether significant efforts made by Defendants on the Plaintiff's behalf are sufficient to rise to the level of accommodation under the NJLAD despite the absence of a memorialized plan or agreement.

The Court therefore finds "that the state court is a better forum to provide the 'surer-footed reading of the applicable law' required by Gibbs." Fitzgerald, 2007 WL 2687456, at *10 (quoting Gibbs, 383 U.S. at 726). Thus, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses them without prejudice such that they may be refiled in the Superior Court of New Jersey.

## IV. CONCLUSION

For the reasons set forth above, the Court grants summary judgment to River Dell as to E.K.'s claims under Section 504. In addition, by indicating their intent to withdraw or dismiss their claims, ECF No. 56, Plaintiffs concede that the following claims are insufficient to survive summary judgment and the Court therefore grants summary judgment on each: E.K.'s claims against the individual defendants under Section 504; T.K. and D.K.'s claims against all

Defendants under Section 504; and E.K., T.K. and D.K.'s claims against all Defendants under the Fourteenth Amendment. Finally, the Court dismisses Plaintiffs' state law claims without prejudice in order to allow Plaintiffs to re-file these claims in a court of competent jurisdiction. An appropriate order follows this opinion.

DATED: March 26, 2015

_____
**CLAIRE C. CECCHI, U.S.D.J.**

14